BFSNG Law Group LLP
Proposed Attorneys for Speyside Holdings, LLC,
Debtor and Debtor-in-Possession
6851 Jericho Turnpike, Suite 250
Syosset, NY 11791
Tel: (516) 747-1136
Gary C. Fischoff, Esq.
gfischoff@bfslawfirm.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:                                                        Case No. 8-26-70730-spg

SPEYSIDE HOLDINGS, LLC,                                       Chapter 11

                                    Debtor.
-----------------------------------------------------------X

**DEBTOR'S AMENDED MOTION PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) FOR ENTRY OF ORDER AUTHORIZING PAYMENT OF PRE-PETITION WAGES, SALARIES, AND OTHER COMPENSATION AND BENEFITS**

TO:    **HON. SHERYL P. GIUGLIANO**
       **UNITED STATES BANKRUPTCY JUDGE:**

Speyside Holdings, LLC ("Debtor"), the debtor and debtor-in-possession herein, by its proposed attorneys, BFSNG Law Group LLP, submits this amended motion (the "Amended Motion") seeking entry of an Order (a copy of which is annexed hereto as **Exhibit "A"**), pursuant to 11 U.S.C. §§ 105(a) and 363(b), and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"): (i) (a) authorizing Debtor to pay pre-petition wages and payroll withholding obligations due to eight (8) of its non-insider employees (the "Employees") for the period February 16, 2026 through February 20, 2026 (the "Wages")[1], pursuant to Debtor's pre-petition practices, which are due to be paid by Debtor to the Employees

---

[1] Although Debtor's payroll period runs from February 16, 2026, through February 22, 2026, the work days for which the Wages are due are for the workweek of February 16, 2026, through February 20, 2026.

1

on February 26, 2026, in the estimated aggregate amount of $18,472.08, which consists of $15,845.22 for the estimated gross Wages, which includes the Employees' estimated withholding payroll taxes for that period in the amount of $4,228.10, and $2,626.86 for Debtor's taxes due on the Employees' Wages (cumulatively, the "Prepetition Employee Obligations"), (b) authorizing up to $2,500.00 to cover any shortfall in the above amounts because the foregoing amounts are estimated and Debtor is unable to calculate payroll for this period in an exact amount until it processes the Prepetition Employee Obligations (the "Shortfall"); (ii) authorizing Debtor to continue its pre-petition practices, programs, and policies for its Employees, including, but not limited to (a) paying for the Employees' health insurance coverage with United Healthcare and paid monthly to UHS Premium Billing, and (b) to continue the contributions to the union funds for those Employees that are union employees, as those practices, programs, and policies were in effect as of the Filing Date, and as those practices, programs, and policies may be modified, amended, or supplemented from time-to-time in the ordinary course of Debtor's business, and to pay any related administrative costs and obligations arising thereunder; (iii) waiving the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h); and (iv) such other and further relief as this Court deems just and proper.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this bankruptcy case and the Amended Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M).

2.      Venue of this bankruptcy case is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a) and 363(b).

**Background**

4.      On February 20, 2026 (the "Filing Date"), a voluntary petition (the "Petition") was filed by the Debtor under Chapter 11 of the Bankruptcy Code.

5.      No trustee or examiner has been appointed in this case, and no official committee of unsecured creditors has been appointed, and Debtor is continuing to operate its property and manage its business as a debtor in possession.

6.      On February 24, 2026, Debtor filed its motion for entry of an Order to authorize the payment of Debtor's Prepetition Employee Obligations as follows: in the estimated aggregate amount of $11,488.76, which consists of $9,773.50 for the estimated gross Wages, which includes the Employees' estimated withholding payroll taxes for that period in the amount of $2,771.73, and $1,715.26 for Debtor's taxes due on the Employees' Wages (the "Motion") [ECF #12].   However, the amounts provided in the Motion were based upon an incorrect reading of Debtor's payroll report which was annexed to the Motion as Exhibit "B". This Amended Motion is to correct this error, and request that Debtor be authorized to pay the correct amounts for Debtor's Prepetition Employee Obligations.

**Debtor's Business**

7.      Debtor is a foreign limited liability company, authorized to do business in New York State as of July 1, 2015.

8.    Debtor, together with Speyside Holdings II[2], LLC and CEM III, LLC[3], cumulatively own 198.79 acres in Highland Mills, New York, which operates an aggregate quarry supplying contractors, cement companies and other construction industry users in the Metro New York area.   In February 2020, Debtor borrowed approximately 14 million dollars from Nebari National Resources Credit Fund L.P. ("Nebari") secured by a mortgage lien on all of the quarry properties.   As additional collateral for the loan, Eugene Fernandez guaranteed the loan and gave mortgage liens on several parcels of vacant land located in Yaphank.   These entities are SRG Horseblock IV, LLC[4], SRG Horseblock II, LLC[5], SGD Group Holdings II, LLC[6], and SGD Group Holdings III, LLC[7], and each are a part of the group of Chapter 11 filings to protect the land from foreclosure sale.   After an alleged default under the loan documents, Nebari commenced an action to foreclosure upon its collateral.   On July 5, 2023, the State Court appointed a receiver to oversee the quarry business.   Since that time the Debtor believes the receiver and his manager have received over $800,000.00 in fees and expenses.   These costs are overwhelming Debtor's operations diverting funds that could have

---

[2]  On February 20, 2026, Speyside Holdings II filed for relief under Chapter 11 of the Bankruptcy Code and was assigned case number 8-26-70731-spg.

[3]  On February 20, 2026, CEM III, LLC filed for relief under Chapter 11 of the Bankruptcy Code and was assigned case number 8-26-70732-spg.

[4]  On February 20, 2026, SRG Horseblock IV, LLC filed for relief under Chapter 11 of the Bankruptcy Code and was assigned case number 8-26-70736-las.

[5]  On February 20, 2026, SRG Horseblock II, LLC filed for relief under Chapter 11 of the Bankruptcy Code and was assigned case number 8-26-70735-las.

[6]  On February 20, 2026, SDG Group Holdings II LLC filed for relief under Chapter 11 of the Bankruptcy Code and was assigned case number 8-26-70733-spg.

[7]  On February 20, 2026, SDG Group Holdings III LLC filed for relief under Chapter 11 of the Bankruptcy Code and was assigned case number 8-26-70734-spg.

gone for the purchase of equipment to make the operations more cost effective.

9.      Debtor and Nebari have been in litigation for over four years.   Debtor has seven appeals pending in the Appellate Division, Second Department, arising and from the foreclosure and related litigation.   In August 2025, the State Court entered a judgment of foreclosure and sale in the amount of $26,786,774.71 plus additional interest and fees.   Debtor intends to pursue the pending appeals which, if successful, would fundamentally change the financial landscape for Debtor.   The pending litigation has consequently chilled possible exit options for Debtor.   Debtor intends to utilize the Chapter 11 process to clear a path forward to resolve its financial turmoil.

10.      As of the Filing Date, Debtor employed 8 full time non-insider employees (the "Employees"). As of the Filing Date, the Employees were owed pre-petition wages. Employees were being paid weekly on an hourly basis.   Annexed hereto as **Exhibit "B"** is a true copy of Debtor's payroll for the period of February 9, 2026, through February 15, 2026, which was paid by Debtor to the Employees on February 19, 2026, which lists the names of each of the 8 non-insider employees of Debtor.   Debtor anticipates that the Prepetition Employee Obligations to be consistent for the amounts due for the Wages and Taxes, and all amounts requested in this Amended Motion are based upon the amounts contained in **Exhibit "B"**.

### *The Wages and Taxes*

11.      Due to the timing of the filing of Debtor's Petition, Debtor has not paid any of its Employees for wages earned during the pre-petition period of February 16, 2026 through February 20, 2025.   As noted, all 8 of Debtor's Employees are continuing to work for Debtor

5

post-petition and their services are essential to Debtor's continued business. The Prepetition Employee Obligations are estimated to be in the gross wage amount of $18,472.08, which includes estimated payroll withholding taxes for that period in the amount of $4,228.10, plus $2,626.86 for Debtor's taxes due on the Prepetition Employee Obligation.

*Shortfall*

12.    The above amounts are estimated because Debtor cannot obtain exact wage and withholding amounts for the period ending February 20, 2026, until it processes its payroll for those periods. Debtor estimates a potential shortfall of not more than $2,500.00 and requests authorization to pay up to that amount in the event that the actual wages and withholding for the above periods is greater than estimated.

13.    Accordingly, between the Prepetition Employee Obligation and the Shortfall, the total amount for which Debtor seeks authorization to pay is no more than $13,988.76.

**Relief Requested**

14.    By this amended motion, Debtor seeks the entry of an order pursuant to 11 U.S.C. § 363(b) and 105(a) of the Bankruptcy Code, authorizing it to (i) pay the Pre-Petition Employee Obligations in the amount of $18,472.08 as detailed in and based upon the previous payroll period as demonstrated by Debtor in **Exhibit "B"** annexed hereto, and (ii) continue its pre-petition practices, programs, and policies for its Employees, including, but not limited to (a) paying for the Employees' health insurance coverage with United Healthcare and paid monthly to UHS Premium Billing, and (b) to continue the contributions to the union funds for those Employees that are union employees, as those practices, programs, and policies were in effect as of the Filing Date, and as those practices, programs, and policies may be modified, amended,

6

or supplemented from time-to-time in the ordinary course of Debtor's business, and to pay any related administrative costs and obligations arising thereunder.

15.     The 8 full time Employees Debtor seeks to pay are all employed by Debtor post-petition and are all essential to Debtor's continued operation of its business.

16.     Debtor seeks entry of the proposed Order annexed hereto as Exhibit "A", together with a waiver of the 14-day stay of Bankruptcy Rule 6004(h).

<u>**The Relief Requested Should Be Granted**</u>

17.     There are multiple legal grounds upon which the relief requested herein should be granted. Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363.   It is also well-established that a court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) when there is a sound business justification for doing so.   *See, e.g., Official Comm. Of Unsecured Creditors v. Enron Corp. (In re Enron Corp.),* 335 B.R. 22, 27-28 (S.D.N.Y. 2005) (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

18.     The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. Of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res. Inc.*), 147 B.R. 650, 656 (S.D.N.Y.1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858,872 (Del.1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir.1993).   "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision

7

made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. Of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

19.     Moreover, 11 U.S.C. § 1107(a), "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "protect and preserve the estate, including an operating business' going-concern value," on behalf of the debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)).   Consistent with these fiduciary duties, courts have authorized payment of prepetition obligations (*see Ionosphere*, 273 B.R. at 175), and recognize that in certain cases, a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N. Tex. 2002).

20.     The Court also may rely upon its equitable powers under 11 U.S.C. § 105(a), which empowers the Court to "issue any order, process, or judgment that is necessary or appropriate or carry out the provisions of" the Bankruptcy Code.   *See Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.)*, 352 F.3d 671, 680 92d Cir. 2003) ("it is axiomatic that bankruptcy courts are 'courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process'") (quoting, *In re Momemtum Mfg. Corp.*, 25 F.3d 1132 (2d Cir. 1994)).

21.     In a long line of well-established cases, courts have consistently permitted post-petition payment of pre-petition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.   *See, e.g., In re Fin. News Network, Inc.*, 134

B.R. 732, 735-36 (Bankr. S.D.N.Y. 1991) ("a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization"); *Ionosphere*, 98 B.R. at 175 (*citing Miltenberger v. Logansport, C&S W.R. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim before reorganization permitted to prevent stoppage of "indispensable business relations"); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

22.     This "doctrine of necessity" functions in a Chapter 11 reorganization as a mechanism by which the Court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.   *See, In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (quoting *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) ("[T]he 'necessity of payment' doctrine [permits] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid."); *In re Boston & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing "existence of a judicial power to authorize trustees in reorganization to pay claims [for] goods and services indispensably necessary" to debtors' continued operation); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("A general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Structurelite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) ("a *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes

9

of the Code"). The rationale for the doctrine of necessity is consistent with the paramount goal of chapter 11, which is "facilitating the continued operation and rehabilitation of the debtor." *Ionosphere*, 98 B.R. at 176.

23.    Debtor submits that the relief requested in this Amended Motion represents the sound exercise of its business judgment, is necessary to avoid immediate and irreparable harm to its business and its Chapter 11 estate, and is justified under 11 U.S.C §§ 363(b), 1107(a), and 105(a).

24.    Payment of the Prepetition Employee Obligations is clearly justified by the facts and circumstances of this Chapter 11 case.   The Employees, all of whom are non-insiders, to be paid are vital to the continued operation of Debtor's business and to its successful reorganization.   Any delay in payment of the Debtor's Prepetition Employee Obligations will undoubtedly adversely affect Employee morale and could lead to the Employees' seeking alternative employment opportunities.   Debtor cannot sustain the damage to its business that would occur if this Amended Motion is not granted.   Moreover, absent an order granting the relief requested, Employees will suffer undue hardship, and in many instances, serious financial difficulties. Without the relief requested, Debtor's restructuring efforts will be severely undermined when otherwise loyal Employees seek alternative employment opportunities, potentially crippling Debtor's ability to meet the obligations necessary to sustain its business.

25.    Further, all of the Prepetition Employee Obligations constitute priority claims under the Bankruptcy Code.   Under 11 U.S.C. § 507(a)(4)(A), the unsecured claims of Employees for "wages, salaries, or commissions, including vacation, severance, and sick leave pay," that are "earned within 180 days before" the Filing Date are afforded priority status up to

$15,150 per individual. Section 507(a)(5) provides that "allowed unsecured claims for contributions to an employee benefit plan" that are "earned within 180 days before" the Filing Date are afforded priority status up to $15,150 per individual, less "the aggregate amount paid to such employees under [Section 504(a)(4)], plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan. Section 507(a)(8) further provides a priority in payment to taxing authorities for payroll taxes. As priority claims, all such Prepetition Employee Obligations must be paid in full before any nonpriority general unsecured claims against Debtor may be satisfied. Accordingly, the relief requested herein likely will affect only the timing of the payment of a substantial portion of the Prepetition Employee Obligations, and would not prejudice the rights of general unsecured creditors.

26.     Moreover, the Debtor's payroll taxes and other withholding obligations represent amounts designated for deduction from Employees' wages on another party's behalf, and therefore, constitute trust funds, which are not property of Debtor's estate. *See,* 11 U.S.C. § 541(b); *Begier v. IRS*, 496 U.S. 53, 59 (1990) (withholding taxes are property held by the debtor in trust for another, and as such, are not property of the debtors' estates); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3d Cir. 1994) (state law that required debtor to withhold city income tax from employee wages created a trust relationship between debtor and city for payment of the withheld taxes).   Accordingly, payment of Debtor's withholding obligations would not prejudice any party in interest.

27.     Satisfaction of the withholding obligations also will avoid potential unnecessary litigation against Debtor's officers and directors, which could distract Debtor from its restructuring efforts. Many federal, state, and local statutes hold officers and directors of

11

collecting entities personally liable or criminally responsible for certain taxes owed by those entities.  To the extent that withholding obligations remain unpaid, Debtor and its officers, directors, and other employees may be subject to lawsuits or criminal prosecution during the pendency of this chapter 11 case.  *See, United States v. Energy Res. Co*., 495 U.S. 545, 546-47 (1990) (to the extent that an employer fails to pay income taxes or social security taxes, 26 U.S.C. § 6672 authorized the government to collect an equivalent sum directly from the employer's officers or employees who are responsible for collecting the tax); *IRS v. Kaplan (In re Kaplan)*, 104 F.3d 589, 591 n.1 (3d Cir. 1997) (Internal Revenue Code authorizes the government to collect certain taxes directly from the corporation's responsible officers or employees); *DuCharmes & Co. v. State of Mich. (In re DuCharmes & Co.)*, 852 F.2d 194, 196 (6th Cir. 1988) (company officers may be held personally liable for failure to pay trust fund taxes). Any such lawsuit or criminal prosecution, and any ensuing liability, would distract the Debtor and its personnel from the effective prosecution of this chapter 11 case. The active participation of Debtor's officers, directors, and other employees is integral to Debtor's continued operations so as to ensure the orderly administration of this case, and thus to maximize the value of the estate for all parties in interest.

28.     Debtor does not currently seek to alter its compensation or other benefit programs or policies. Rather, pursuant to 11 U.S.C. §§ 363(b) and 105(a), it seeks authority to pay the Prepetition Employee Obligations in the ordinary course of business, and to continue at this time its practices, programs, and policies for their Employees, including, but not limited to (a) paying for the Employees' health insurance coverage with United Healthcare and paid monthly to UHS Premium Billing, and (b) to continue the contributions to the union funds for those Employees

12

that are union employees, as those practices, programs, and policies were in effect as of the Filing Date or as such policies may be modified, amended, or supplemented from time-to-time in the ordinary course of business.   Further, Debtor is not seeking authority to pay any individual Employee an amount greater than the $15,150 priority cap imposed by 11 U.S.C. § 507(a)(4) on account of outstanding Prepetition Employee Obligations and is not seeking to pay wages to any insider.

### Reservation of Rights

29.      Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity or priority of any claim against Debtor, or (ii) a waiver of Debtor's or any appropriate party in interest's rights to dispute any claim.   Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity or priority of any claim or a waiver of Debtor's rights to dispute such claim subsequently.

### Waiver of Fourteen Day Stay under Bankruptcy Rule 6004(h)

30.      To implement the foregoing immediately, Debtor seeks a waiver of the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### No Prior Request

31.      No previous request for the relief sought herein has been made by the Debtor to this or any other Court.

**WHEREFORE**, Debtor respectfully requests that the Court enter an order substantially in the form annexed hereto as **Exhibit "A"** granting the relief requested herein, and for such other and further relief as this Court deems just and proper.

Dated: Syosset, New York
      February 25, 2026

                                       BFSNG Law Group LLP
                                       Proposed Attorneys for Speyside Holdings LLC,
                                       Debtor and Debtor-in-Possession

                                       By:   *s/Gary C. Fischoff*
                                                    Gary C. Fischoff
                                         6851 Jericho Turnpike, Suite 250
                                       Syosset, New York 11791
                                       Telephone: (516) 747-1136
                                       Email: gfischoff@bfslawfirm.com