**AMENDED BIDDING AND AUCTION PROCEDURES**

These Terms and Conditions of Sale are promulgated in connection with the sale (the "Sale") of the real property, improvements thereon, and personal property located thereon and all intellectual property associated therewith, located at and commonly known as the Speyside Stone and Sand quarry, located at 911 Route 32, Highland Hills New York (collectively, the "Quarry"). The Seller of the Quarry is Speyside Holdings LLC, the Debtor and Debtor-in-Possession ("Debtor"). The sale of the property shall be conducted pursuant to Sections 363(f), 1123(a)(5)(D) and 1141(c) of the Bankruptcy Code and, solely for purposes of distribution, the Liquidating Plan of Reorganization of Speyside Holdings, LLC [ECF No. 139] (the "Plan").

A. On June 26, 2026, the Bankruptcy Court entered an order [Dkt. No. 179] (the "Bidding Procedures Order") approving certain bidding procedures (the "Bidding Procedures"). On October [__], 2026, the Bankruptcy Court entered an amended order [Dkt. No. ___] (the "Amended Bidding Procedures Order") approving these amended bidding procedures (the "Amended Bidding Procedures").

B. Marketing. The Debtor has retained Hilco Global as its exclusive real estate broker (the "Broker") to market the Quarry. To receive information regarding the Quarry please contact the Broker – Hilco Global, Attn: Jonathan Cuticelli, (847) 305-4256, email: jcuticelli@hilcoglobal.com.

C. Sale Free and Clear of Liens. The sale of the Quarry shall be free and clear of liens, claims, encumbrances, equities and interests, of any nature or kind pursuant to Section 363 of the Bankruptcy Code. All liens and encumbrances upon the Quarry shall remain in effect until the Closing (hereinafter defined) of Sale, and at a Closing, shall be transferred to and attach to the net proceeds of the Sale in the same priority that existed immediately before the Closing and disbursed pursuant to the provisions of the Plan.

D. Broker's Commission. The Broker will be paid a commission in accordance with the Broker's retention agreement and further order of the Court and will be paid only with regard to the closing of the sale under these Amended Bid Procedures.

E. Solicitation of Bids. The Broker had previously distributed a teaser, and Confidentiality Agreement, and other materials to potentially interested parties advising them of the opportunity to acquire the Quarry and provide interested parties access to a virtual data room pursuant to the Original Bidding Procedures which solicitation forms the basis for the currently proposed sales process. The Broker shall oversee any continued marketing, bidding and Sale process provided for herein in consultation with the Debtor and Lender (hereafter defined) and their representatives.

F. Bid Qualifications. Any potential bidder (each, a "Bidder") who wishes to submit a bid (a "Bid") with respect to the Quarry must demonstrate to the satisfaction of the Debtor, in consultation with SpeyLo Holdings, LLC, as assignee of Nebari Natural Resources Credit Fund, L.P. (the "Lender"), that such Bidder is a "Qualified Bidder." A Qualified Bidder is a Bidder who must deliver to (i) counsel to the Debtor, BFSNG Law Group, LLP, 6851

Jericho Turnpike, Suite 250, Syosset, NY 11791 (attn: Gary C. Fischoff, Esq., gfischoff@bfslawfirm.com) and (ii) the Broker, Hilco Global, attn: Jeff Azuse, 5 Revere Drive, Suite 410, Northbrook, IL 60062 (attn: Jonathan Cuticelli at JCuticelli@hilcoglobal.com and Benjamin Zaslav, bzaslav@hilcoglobal.com, a written Bid that is a signed binding offer on or before November 13, 2026 at 5:00 p.m. (the "Bid Deadline") that:

(i) includes an executed copy of the Confidentiality Agreement;

(ii) states that the Bidder has entered or will enter into a purchase and sale agreement for the acquisition of the Quarry, in form substantially similar to the form Asset Purchase Agreement included in the Data Room (the "Form APA") marked to show any changes thereto, that identifies, among other things, (i) any personal property sought to be acquired by the Bidder and (ii) any executory contracts sought to be assumed and assigned, if any, pursuant to the Assumption and Assignment Procedures approved herewith;

(iii) states the purchase price in U.S. dollars in cash and allocates such purchase price between the real property and each piece of personal property including allocation to that of Sandvik Financial Services, LLC if any;

(iv) states the Bidder's offer is irrevocable until the approval of the Successful Bid by the Court unless designated as the Backup Bid (as such terms are defined below), *provided that* if such offer is selected as a Successful Bid (as defined below) or a Backup Bid, then the offer shall remain binding and irrevocable for a period of thirty (30) days following entry of an order approving the Successful Bid;

(v) does not request or entitle the Bidder to any transaction or break-up fee, expense reimbursement or similar type of payment;

(vi) does not contain any financing contingencies or any other contingencies including, but specifically not limited to, the issues or transfer of any required permits from the Department of Environmental Conservation or otherwise prior to Closing;

(vii) fully discloses the identify of each Bidder that will be bidding for the Quarry or otherwise participating in connection with such Bid on behalf of the Bidder, the terms of any such participation (including, if the Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by the Bid, the equity holders or other financial backers), the Bidder's address, telephone number and email address where the Bidder may be contacted;

(viii) states that the Bidder is financially capable of consummating the transaction contemplated by the Bidder's Bid and any increased or modified Bid that may be made at the Auction Sale (hereinafter defined);

(ix) is accompanied by financial information satisfactory to the Debtor, in consultation with the Lender, which fairly and reasonably demonstrates the Bidder's ability (and the source of the Bidder's ability) to close on its purchase of the Quarry if the Bidder should be the Successful Bidder (hereinafter defined), in an amount at least as much as its Bid as necessary to consummate the transaction contemplated by the Bidder's Bid and any increased or modified Bid that may be made at the Auction Sale;

(x) disclose fully and accurately all details whether and the extent which Bidder or any of its affiliated or related parties is, or is affiliated with or related to (as an advisor, consultant, manager, director, officer, employee, investor, owner, lender supplier, customer or otherwise), or has offered, agreed or proposes to be affiliated with or related to (as an advisor, consultant, manager, director, officer, employee, investor, owner, lender, supplier, customer or otherwise), any partner, member, shareholder, equity holder, manager, creditor, officer, director, stockholder, agent, employee or insider (as defined in Section 103(31) of the Bankruptcy Code) of the Debtors, the Debtors' principals, or any of their respective affiliates, advisors, representatives, or family members (or any entity directly or indirectly managed or controlled by any of the foregoing);

(xi) provide information on the Bidder's prior experience owning/operating a quarry or a facility comparable to the Quarry or such other applicable experience;

(xii) includes an executed original of these Amended Bidding Procedures acknowledging and agreeing to these Amended Bidding Procedures, including the following:

(a) the Bidder had the opportunity to conduct any and all due diligence regarding the Quarry prior to making its Bid, has relied solely on its own independent investigation, analysis, appraisal and evaluation of the Quarry and it did not rely upon and did not receive any written or oral statements, representations, warranties, promises or guaranties whatsoever, whether express or implied or by operation of law or otherwise, with respect to the Quarry and waive any and all claims against the Debtor, the Broker and the Debtor's attorneys;

(b) the Bidder's Bid is irrevocable until the earlier of the Closing Date (as defined herein) or until its Bid is affirmatively rejected;

(c) the Bidder is financially able to acquire the Quarry in cash, without contingencies as to financing and/or additional due diligence;

(d) the Bidder, if it is the Successful Bidder, will complete the Auction Sale and Closing in accordance with the timing set forth in these Amended Bidding Procedures;

(e) the Bidder acknowledges that it agrees to be a Backup Bidder (as defined below) in accordance with the terms of these Amended Bidding Procedures should the Bid be so selected; and

(f) the Bidder, if it is the Successful Bidder, will pay the Broker the commission at Closing, exclusive of and in addition to the purchase price.

(xiii) includes evidence of authorization and approval from the Bidder's board of directors (or comparable governing body) to purchase the Quarry pursuant to its Bid at the Auction Sale;

(xiv) contains other information reasonably requested by the Debtor and/or the Broker, in consultation with the Lender;

(xv) states that the Bidder's expected Closing Date must take place on or before November 30;

(xvi) identify each regulatory and third-party approval required for the Bidder to consummate the Sale, and the time period within which the Bidder expects to receive such regulatory and third-party approvals, including, but not limited to New York State Department of Environmental Conservation Permit; and

(xvii) be accompanied by the evidence that a good faith deposit in the amount of 10% of the initial proposed purchase price set forth in the Bid (the "Bid Deposit"), in immediately available funds, has been made (or is concurrently being made) by wire transfer to the Advantage Title Company who shall act as an escrow agent (the "Escrow Agent"), pursuant to wire instructions to be provided by the Broker, which Bid Deposit shall be held by the Escrow Agent in an interest bearing, segregated, account.

A Bid meeting the above requirements shall constitute a "Qualified Bid." Within one (1) business day of the Bid Deadline, the Debtors shall provide copies of the Bids to the Lender. Thereafter, the Debtor, in consultation with the Broker and Lender, shall make a determination regarding whether a Bid is a Qualified Bid and the Broker shall notify Bidders whether their Bids have been determined to be qualified by not later than November 16, 2026 at 5:00 p.m. (prevailing Eastern Time). The Debtor, after consulting with Lender, reserves the right to waive noncompliance with any one or more of the above requirements to be a Qualified Bid and deem an otherwise not Qualified Bid to be a Qualified Bid if, in consultation with the Lender, it reasonably determines, in its business judgment, that such waiver is consistent with its fiduciary duties.

G. Other Assets Included in the Sale. In addition to the Quarry, the Auction Sale will also include all right, title, and interest of the Debtor in personal property at and associated with the operations of the Quarry, including but not limited to, inventory, equipment, assignable permits, and all intellectual property associated therewith which property is included in the

definition of Quarry as used herein. Notwithstanding the foregoing, no equipment in which Komatsu Financial Limited Partnership has a security interest pursuant to a Conditional Sale Contract shall be included in the Sale. The Form APA submitted with the Qualified Bid shall separately allocate a purchase price to such personal property including allocation to that of Sandvik Financial Services, LLC if any.

H. Auction Sale. The Auction Sale will take place on November 17, 2026 at 10:00 a.m. (the "Auction Date") and will be held virtually with login details being provided to any Qualified Bidder.

I. Bidding. In addition to delivering a Bid Deposit, all Qualified Bids must satisfy the following terms and conditions: (i) the Qualified Bid shall provide for a minimum purchase price (the "Initial Bid"), with subsequent bid increments of $100,000.00 per bid thereafter, or such other Initial Bid and/or minimum bid increments that the Debtor, with the consent of the Lender, may deem appropriate; (ii) the Qualified Bid shall not be contingent upon the receipt of financing necessary to its consummation, and the Qualified Bidder shall have demonstrated, to the satisfaction of the Debtor, Lender and Broker, evidence of its ability to conclude the transaction without delay; and (iii) the Qualified Bid shall not be conditioned upon the outcome of unperformed due diligence by the Qualified Bidder with respect to the Quarry.

J. Credit Bid. Lender shall be deemed a Qualified Bidder and may, but is not required to, submit a credit bid for the Quarry, inclusive of personal property on which Lender has a lien, not to exceed twenty-five million USD ($25 million) (the "Maximum Credit Bid"), subject only to the payment at Closing of all other senior liens, if any. Lender shall not be required to submit a Bid by the Bid Deadline or made a Bid Deposit. Notwithstanding the foregoing, neither the Maximum Credit Bid, nor any lesser credit bid submitted by Lender, nor these Amended Bidding Procedures, shall have any effect whatsoever on the final determination of the allowance of Lender's claim in these or any other proceedings. The allowance and determination of Lender's claim, and all respective rights of Lender and Debtors with respect thereto, are fully preserved.

K. Adjournment and Cancellation of Auction. The Debtor reserves the right, in its business judgment, after consultation with, and on notice to, the Lender, to make one or more adjournments or cancellation of the Auction Date to, among other things, (i) facilitate discussions between the Debtor, on the one hand, and one or more Qualified Bidders, on the other hand, (ii) allow the Debtor and/or Qualified Bidders to consider how they wish to proceed, (iii) give Qualified Bidders the opportunity to provide the Debtor with such additional documentation or information as the Debtor in its business judgment may require to determine such Qualified Bidder's ability to close the Auction Sale, (iv) facilitate higher or better bids or(v) proceed with a private sale of the Quarry directly to the Qualified Bidder if, in the determination of the Debtors, Broker and Lender, the Qualified Bidder will be the only Bidder for the Quarry, or (vi) cancel the Auction and proceed with a credit bid of the Lender submitted pursuant to the Original Bidding Procedures for the Sale as the Backup Bidder thereto.

L. Successful Bidder and Backup Bidder. At the Auction Sale, once a Qualified Bidder is determined by the Debtor, in consultation with the Lender, to have made the highest or best offer for the Quarry (the "Successful Bidder") and no other Bids are pending or deemed by the Broker to be reasonably forthcoming during the Auction Sale, bidding shall be deemed closed, and no additional Bids will be considered. The determination of the highest and best bid will include the over benefit to the creditors and the estates, including, but not limited to, the assumption and assignment of executory contracts. The Qualified Bidder with the next highest or best Bid submitted at the Auction Sale, as determined by the Debtor, in consultation with the Lender, shall be the "Backup Bidder." In determining the Successful Bidder and Backup Bidder, the Debtor may consider, without limitation, (i) the amount of the purchase price offered, (ii) the form of consideration offered, (iii) the Qualified Bidder's ability to close the Sale at the amount of its last Bid made at the Auction Sale, and the timing thereof, (iv) indicia of good faith on the part of the Qualified Bidder, (v) the terms and conditions of the Qualified Bidder's purchase and sale agreement for the purchase of the Quarry, and (vi) the net benefit to the Debtor's estate. Unless there is another Bid submitted by a Qualified Bidder, the Lender's credit bid shall be considered the Backup Bid.

M. Successful Bidder. Additional Deposit. Within one business day after the Successful Bidder is determined, the Successful Bidder, shall be required to increase the Bid Deposit to an amount equal to ten percent (10%) of the purchase price of the winning bid (the "Purchase Price"), which amount shall serve as a good faith deposit against payment of the Purchase Price, TIME BEING OF THE ESSENCE AS TO THE SUCCESSFUL BIDDER'S OBLIGATION TO INCREASE THE DEPOSIT. Within two (2) business days after the conclusion of the Auction Sale, the Broker will return the Bid Deposits to all other bidders, other than the Backup Bidder (as defined below).

N. Sale Hearing. The Debtor shall file a notice of sale on or before November 19, 2026. A hearing to consider approval of the sale of the Quarry to the Successful Bidder (the "Sale Hearing") will be held on November 24, 2026 at 1:00 p.m. (prevailing Eastern Time) before the Honorable Sheryl P. Giugliano, United States Bankruptcy Judge at the courtroom located at 290 Federal Plaza, Central Islip, New York 11722. The Sale Hearing will be conducted in person. Objections to approval of the Sale to the Successful Bidder shall be filed by November 23, 2026 at 12:00 p.m. (prevailing Eastern Time) (the "Sale Objection Deadline") and served on (i) counsel for the Debtors, BFSNG Law Group, LLP, 6851 Jericho Turnipke, Suite 250, Syosset, NY 11791 (attn: Gary C. Fischoff, Esq., gfischoff@bfslawfirm.com), (ii) counsel for the Lender, Squire Patton Boggs (US) LLP, 1120 Avenue of the Americas 13th Floor, New York, NY 10036 (attn: Katherine Catanese, Esq., katie.catanese@squirepb.com and Christipher Giaimo, Christopher.giaimo@squirepb.com), (iii) the Office of the United States Trustee, (iv) the Successful Bidder and counsel thereto, and (v) all interested parties. Counsel for the Debtor shall provide at least two (2) business days written notice of the Sale Hearing to: (i) the Office of the United States Trustee, (ii) the Lender, (iii) all creditors; and (iv) all interested parties by overnight delivery by USPS or Federal Express and shall file a certificate of service prior to the Sale Hearing. At the Sale Hearing, the Debtor shall present the Successful Bid to the Bankruptcy Court for approval.

O. Sale Order. The order approving the Sale of the Quarry to the Successful Bidder (the "Sale Order") shall approve the Auction Sale free and clear of all liens, claims, and encumbrances, and in connection therewith. The Sale Order shall be in form and content substantially similar to the Order entered by the Court on September 28, 2026 at ECF 217 and shall contain, *inter alia*, the following findings of fact and conclusions of law; that the terms of the Sale are fair and reasonable, (ii) that the Auction Sale, and the Successful Bidder's purchase of the Quarry is non-collusive, fair and reasonable and was conducted openly and in good faith, (iii) that the sale and transfer of the Quarry to the Successful Bidder represents an arms-length transaction and was negotiated in good faith between the parties, (iv) that the Successful Bidder, as transferee of the Quarry, is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protection of section 363(m) of the Bankruptcy Code, (v) the sale of the Quarry to the Successful Bidder was not controlled by an agreement among potential Bidders; and (vi) that no cause of action exists against the Successful Bidder or with respect to the Sale of the Quarry to the Successful Bidder under section 363(m) of the Bankruptcy Code.

P. Closing. The Successful Bidder must pay the balance of the Purchase Price for the Quarry (the difference between the amount of the Successful Bid and the Bid Deposit as increased by the supplemental deposit in Paragraph N above) in accordance with the terms of the Sale Order, in full in cash, at the Closing of title to the Quarry (the "Closing"). The Successful Bidder must close title to the Quarry at a date mutually acceptable to the Successful Bidder and the Debtor in consultation with the Lender (the "Closing Date") that is no later than November 30, 2026, TIME BEING OF THE ESSENCE as to the Successful Bidder, although such date may be extended solely to the Debtor, with the consent of the Lender.

Q. Exemption from Transfer Tax. Under the Plan, to the maximum extent provided by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under the Plan (including an instrument of transfer executed in furtherance of the Sale), shall not be subject to tax under any law imposing a stamp tax, real estate transfer tax, mortgage recording tax, mansion tax, or similar tax due on the sale of the quay in connection with or in furtherance of the Plan.

R. Damages for Buyer's Failure to Close. TIME IS OF THE ESSENCE AS AGAINST THE SUCCESSFUL BIDDER AND THE FAILURE OF THE SUCCESSFUL BIDDER TO EITHER TIMELY PAY THE ADDITIONAL BID DEPOSIT OR TIMELY CLOSE FOR ANY REASON WHATSOEVER (EXCEPT AS OTHERWISE PROVIDED BELOW), INCLUDING ITS FAILURE TO PAY THE BALANCE OF THE PURCHASE PRICE ON THE CLOSING DATE, WILL RESULT IN THE DEBTOR RETAINING THE DEPOSIT AS LIQUIDATED DAMAGES AND THE TERMINATION OF THE SUCCESSFUL BIDDER'S RIGHT TO ACQUIRE THE QUARRY. The Successful Bidder shall be obligated to close title to the Quarry and there is no contingency of any kind or nature that will permit the Successful Bidder to cancel or avoid its obligation under these Bidding Procedures other than the Debtor's inability to deliver a bargain and sale deed without covenants against grantor's act to the Quarry. Expenses incurred by the Successful Bidder,

or any Qualified Bidder relating to any due diligence, such as obtaining title reports or environmental inspections, shall be the sole responsibility of such Qualified Bidder, and under no circumstances shall the Debtor's or the Debtor's professionals be responsible for, or pay, such expenses.

S. Backup Bidder. In the event that the Successful Bidder fails to tender the payment of the balance of the Purchase Price on the Closing Date, or otherwise perform any of its obligations under these Amended Bidding Procedures, the Debtor, with the consent of the Lender, shall be authorized to sell the Quarry to the Backup Bidder without any further notice, and without giving credit for the Bid Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Debtor, in consultation with the Lender, deems appropriate. Should the Backup Bidder fail to close on the Quarry, within such time as the parties may agree but not to exceed ten (10) days after notice from the Debtor to the Backup Bidder, the Debtor shall be authorized to sell the Quarry to the next highest or best Qualified Bidder, without the necessity of any further notice. All Qualified Bidders will be bound by these Amended Bidding Procedures, including without limitation, those terms set forth in the paragraphs above, except that the Backup Bidder must close within ten (10) days of notification that its bid is accepted. TIME BEING OF THE ESSENCE as to the Backup Bidder.

T. As is Sale. The Quarry is being sold free and clear of all liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the net proceeds of sale after deduction of any expenses of sale. Furthermore, the Quarry is being sold "AS IS", "WHERE IS", "WITH ALL FAULTS", without any representations, covenants, guarantee or warranties of any kind or nature whatsoever and subject to, among other things, (i) any state of facts that an accurate survey may show; (ii) any covenants, applicable permits of any kind restrictions and easements of record; (iii) any state of facts a physical inspection may show; (iv) any building or zoning ordinances or other applicable municipal regulations and violations thereof; and (v) environmental conditions, including, without limitation, the Quarry compliance (or lack of compliance) with environmental laws and the presence or absence of underground fuel storage tanks, any hazardous materials or asbestos anywhere on the Quarry. By delivering its respective Bid Deposit, each Bidder is deemed to have acknowledged that it has had the opportunity to review and inspect the Quarry, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on its own independent investigations and inspections of the Quarry in making its Bid. Neither the Debtor nor any of its representatives make any representations or warranties with respect to the permissible uses of the Quarry, including but not limited to, the zoning or permitting of the Quarry. All Bidders are deemed to have acknowledged that they have conducted their own due diligence in connection with the Quarry and are not relying on any information provided by the Debtor, the Broker or their respective professionals.

U. Deed. The Debtor shall convey the Quarry by delivery of a bargain and sale deed without covenants against grantor's acts, and a bill of sale for the personal property and intellectual property.

V. Auctioneer. Hilco Global.

W. Debtor's Failure to Close. If the Debtor is unable to deliver title to the Quarry in accordance with these Amended Bidding Procedures for any reason whatsoever or in the event that the Bankruptcy Court refuses to approve the Sale of the Quarry, the Debtor's only obligation will be to refund the Bid Deposit to the Successful Bidder, and upon such refund, the Successful Bidder will have no claim or recourse against the Debtor, or its professionals.

X. Right to Withdraw Sale. The Debtor reserves the right to withdraw the Quarry from the Auction Sale, either prior or subsequent to the Auction Sale, only with the written consent of the Lender.

Y. Bankruptcy Court Jurisdiction. The Bankruptcy Court shall determine any disputes concerning the sale of the Quarry. By participating in the Auction Sale, all Bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes under the Debtor's pending Chapter 11 case.

Z. Reservation of Rights. The Debtor, in consultation with the Lender, is authorized to amend and modify these Terms and Conditions of Sale to impose additional terms and conditions on the proposed Auction and Sale of the Quarry, or to modify or eliminate any of the terms and conditions contained herein if, (i) the Debtor's reasonable judgment, such modification would be in the best interest of maximizing value from the Sale of the Quarry and to promote an open and fair Auction and Sale process, and (ii) such modifications and/or additional terms and conditions are not materially inconsistent with the provisions of these Terms and Conditions of Sale.

AA. To the extent of any inconsistencies between the terms of the Sale Motion and the terms of these Amended Bidding Procedures, the terms of these Amended Bidding Procedures shall govern in all respects.

I have read these Terms and Conditions and agree to be bound by them.

Date: ____________________________

Bidder: ____________________________

Signature: ____________________________

Title: ____________________________

Address: ____________________________